## Commonwealth v. Smith

C.P. of Bucks County, no. 1218-1994.

*Michael Fanning, assistant district attorney,* for Commonwealth.

*Heide Keisling, assistant public defender,* for defendant.

BIESTER, *J.,* October 24, 1994—On May 18, 1994, a jury found defendant, Lorraine Smith, guilty of violating the Public Assistance Laws. 62 P.S. §481. On July 11, 1994, this court sentenced defendant to 12 months probation under the supervision of the Bucks County Adult Probation authorities. The sentence also required that defendant pay the costs of prosecution and pay restitution in the amount of $999.

Defendant now appeals the conviction on the grounds that there was insufficient evidence from which the jury could calculate whether defendant had in fact received overpayments of food stamps. She also appeals on the grounds that the sentence of restitution was improper, arguing that no evidence was presented at trial or during the sentencing hearing as to how the amount of defendant's overpayment was to be calculated. We disagree.

The evidence at trial established that defendant was receiving assistance from the Department of Public Welfare while, in fact, she failed to report certain income earned by her husband. Through the testimony of Susan Russo, an income maintenance caseworker with the Commonwealth of Pennsylvania, the Commonwealth established defendant's monthly reported income. Ms. Russo testified that defendant reported an income of $520 for April 1992; $283.68 for May 1992; $400 for June 1992; and $532 for July 1992. Ms. Russo also testified that defendant reported that her husband's employment terminated on July 15, 1992. Defendant reported an income of $0 for August 1992. Thus, defendant's total reported income for the period of April 1992 to August 1992 was $1,735.68.

A household of five can receive up to $1,697 in gross income per month and still be eligible for assistance. Ms. Russo testified that defendant received $1,930 worth of benefits. Ms. Russo indicated that if defendant declared no income from her husband, she would be entitled to more benefits because food stamps are determined by the amount of household income and expenses.

Through the testimony of Dean Mancini, general manager of Highway Marine Service, the Commonwealth established defendant's husband's income. Defendant's

husband, who was employed by Highway Marine, was paid biweekly and received a monthly commission check. Mr. Mancini testified that in 1992 defendant's husband received the following paychecks:

| Date | Amount | Nature of income |
| --- | --- | --- |
| 4/01/92 | $ 120.00 | Wages |
| 4/14/92 | $ 112.50 | Commission |
| 4/15/92 | $ 400.00 | Wages |
| 4/29/92 | $ 400.00 | Wages |
| 5/12/92 | $1202.08 | Commission |
| 5/13/92 | $ 400.00 | Wages |
| 5/27/92 | $ 400.00 | Wages |
| 6/09/92 | $1644.80 | Commission |
| 6/10/92 | $ 500.00 | Wages |
| 6/24/92 | $ 324.00 | Wages |
| 7/06/92 | $1122.67 | Commission |
| 7/08/92 | $ 400.00 | Wages |
| 7/22/92 | $ 132.00 | Wages |
| 8/03/92 | $1112.24 | Commission |

(N.T. 38-44.)

Thus, the total amount of actual income earned at Highway Marine between April 1992 and August 1992 was $8,270.29. This is sufficient evidence for the jury to conclude that defendant failed to report approximately $6,535.29 during this four month period. Ms. Russo testified that had defendant reported this actual income, she would not have been entitled to the benefits that she actually received, the cut-off limit being $1,697 per month.

The Commonwealth also set forth evidence from which the jury could reasonably infer that the failure to disclose material facts regarding income was willful. Although defendant testified that she did not control the finances in her home, she did state that she obtained access to their checking account and wrote a check

on that account. Defendant stated that she intended to intercept the bank statement so her husband would not discover that she wrote a check. From this testimony, the jury could reasonably infer that defendant knew what amount of money was in that checking account. Although defendant insisted that her husband never told her how much money he earned, she testified that they shared a joint checking account. Certainly, this information would have been available to defendant through the bank. Indeed, defendant testified that she did open mail that "looked important." (N.T. 77.) It is reasonable to infer that defendant opened mail sent to her residence from the bank, which would include transaction statements on the joint checking account.

Defendant testified that they paid a $500 per month mortgage on their house. Although defendant stated that she did not know if the mortgage was being paid during the period in question, there was no indication that the mortgagee had taken steps to foreclose, or even that the mortgagee had threatened to do so. It is reasonable to conclude that the monthly mortgage of $500 was being paid.

Furthermore, if defendant and her husband owned their home, then it logically follows that they were responsible for paying other utilities, such as water, electricity, heat, and phone. Defendant stated that she received "a lot of very angry notices in the mail about bills." (N.T. 77.) However, there is no evidence that any utilities had been disconnected due to failure to pay during the four month period in question.

Defendant also testified that her husband owned eight automobiles and, even though the automobiles may not have been in mint condition, two of them were Porsches. Defendant admitted that she knew her husband was receiving commission checks in addition to his wages,

but insisted that she never knew how much they were for. Therefore, it is clear that defendant knew that she reported to Ms. Russo a lesser amount of income than her household actually received.

On cross-examination of the defendant, the Commonwealth compared documented evidence that defendant's husband received approximately $2,000 in wages and commission in May 1992 with defendant's testimony that she knew only that her husband received two checks for approximately $141 during that month. Defendant testified that she did attach two pay stubs for $141 to her report. Mr. Mancini's evidence demonstrates that defendant's husband did not receive any checks from Highway Marine in the amount of approximately $141. Similarly, defendant testified that her husband received a check for $400 in June and that she attached a corresponding pay stub to her monthly report in June. However, Mr. Mancini's evidence demonstrates that defendant's husband did not receive a check from Highway Marine for $400 in June. In attempting to explain these discrepancies, defendant asserted that her husband "had other odd jobs too." (N.T. 81.) Thus, the jury could conclude that defendant's husband had been receiving income in addition to that earned at Highway Marine and testified to by Mr. Mancini. The Commonwealth made similar comparisons between the reported and the actual income for the remaining period in question.

The jury listened to defendant's explanation for these discrepancies, observed her mannerisms and demeanor as she testified, and weighed the credibility of her testimony. This court, also having observed all of the evidence and heard all the testimony, concludes that there was sufficient evidence presented at trial from which the jury could reasonably find that defendant's failure

to report the entire earned income was willful. At the very least, defendant was not entitled to benefits at all for the months of May and June of 1992. Furthermore, defendant testified that her husband had "odd jobs." Therefore, it is reasonable to infer that any income earned from these "odd jobs" would have pushed their household over the cut-off limit of $1,697 per month, disqualifying them from receiving assistance in the remaining months of the period in question.

Charts were constructed and documents were introduced with respect to the amount of income defendant reported and the amount of income her husband actually earned. Ms. Russo testified that had defendant reported the actual income, defendant would have been entitled to a lesser amount than she received, if she would have been eligible at all. Given the amount of income defendant's household received from Highway Marine, and that defendant's husband was working additional "odd jobs," and that defendant's mortgage on their own home was being paid, and that their utilities were being paid, and that defendant's husband owned eight automobiles—a jury *certainly* could conclude that defendant was not the type of individual that the public assistance program was intended to aid and that defendant did indeed receive overpayments of benefits due to her willful false misrepresentations to the income caseworker.

The Commonwealth evidence clearly established that defendant violated the Public Assistance Laws. The evidence was sufficient to establish that she was overpaid some amount of money. Upon consideration of this evidence, the jury returned a verdict of guilty and set the amount of restitution at the lowest monetary range of $999 and below. (N.T. 2-3 (May 18, 1994).) This court properly imposed sentence based upon the jury's finding and its own analysis.